IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 15, 2013

**TOM PERRY BELL v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Hamilton County**
**No. 283735    Don W. Poole, Judge**

**No. E2013-00813-CCA-R3-PC - Filed December 27, 2013**

The Petitioner, Tom Perry Bell, filed a petition for post-conviction relief attacking his guilty-pleaded conviction for burglary and resulting eight-year sentence. The post-conviction court denied relief following an evidentiary hearing, finding that the Petitioner had failed to prove his allegations by clear and convincing evidence. In this appeal as of right, the Petitioner contends that trial counsel was ineffective at sentencing principally by failing to discover or challenge several errors in the presentence investigation report regarding his criminal history. After our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and JEFFREY S. BIVINS, JJ., joined.

Brandy Spurgin, Chattanooga, Tennessee, for the appellant, Tom Perry Bell.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; William H. Cox, III, District Attorney General; and Jason Demastus, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
FACTUAL BACKGROUND

A Hamilton County grand jury returned an indictment against the Petitioner, charging him with burglary, misdemeanor theft, possession of burglary tools, and vandalism valued at more than $10,000. See State v. Tom Perry Bell, No. E2010-01504-CCA-R3-CD, 2012 WL 32710, at *1 (Tenn. Crim. App. Jan. 6, 2012). This court, on direct appeal, provided the following factual basis for the offenses:

That on or about June 13th, 2009, the police were dispatched to 3506 Brainerd Road on an alarm call. This is a business. When they approached the building, they saw the [Petitioner] inside of the business with a large screwdriver in his hand. They surrounded the business, gave demands for the [Petitioner] to get down on the ground and drop the screwdriver. They took him into custody at that point, located a camera that was property of the business in [his] front pocket, right front pocket. There was also change that was missing from the business. He was arrested and charged with the offenses that I just read off.

I believe any further factual basis although not necessary—well, and, of course, people from the business did not give him permission to enter that and take those items.

Id. In April 2010, the Petitioner entered an "open" plea, as a Range II, multiple offender, to burglary, a Class D felony, and the remaining charges were dismissed. The trial court accepted the Petitioner's plea.

The trial court then held a sentencing hearing.

At the sentencing hearing, Jim Rox, an employee of the Tennessee Board of Probation and Parole, testified that he prepared a presentence report in this case. He interviewed [the Petitioner] at the Hamilton County Jail, and [the Petitioner] said: "It was ignorant of me to do what I did." Mr. Rox testified that [the Petitioner] indicated that he had not been employed "since the 1990's, being incarcerated off and on since that time. He said [the] last job he had was working for a man named Charlie at a place called Auto Rebuilders during the 1999's."

Mr. Rox testified that [the Petitioner] had a total of fifty-four prior convictions, at least twelve of which were felony convictions. He said that [the Petitioner] was on probation for criminal trespassing and unauthorized use of a vehicle when the present offense was committed. [The Petitioner's] probation for unauthorized use of a vehicle was revoked on July 8, 2009. Mr. Rox testified that [the Petitioner] also had his probation revoked in several other cases.

On cross-examination, Mr. Rox testified that [the Petitioner] said that he had not served in any branch of the military. It would surprise him to know that [the Petitioner] was in the Army from 1976-1977. Mr. Rox agreed that

-2-

most of [the Petitioner's] past crimes were property crimes; however, he had two convictions for "criminal sexual conduct that happened back in 1979" when he was twenty years old. Mr. Rox testified that [the Petitioner] was homeless.

Id.

At the conclusion of the hearing, the trial court imposed the maximum sentence for the Petitioner's range. In so doing, the trial court applied the following enhancement factors: the Petitioner had a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range; the Petitioner, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community; and the Petitioner was released on probation at the time of the felony. Tenn. Code Ann. § 40-35-114(1), (8), and (13)(C). As mitigating factors, the trial court considered that the Petitioner's conduct neither caused nor threatened serous bodily injury and that he pled guilty. Tenn. Code Ann. § 40-35-113(9) and (13).

The Petitioner appealed his sentence to this court, arguing that it was excessive. See Bell, 2010 WL 32710, at *3. This court affirmed, reasoning in part as follows:

The record reflects that the trial court considered the evidence presented at the guilty plea acceptance hearing and at the sentencing hearing. The court further considered the presentence report, the principles of sentencing and the arguments as to sentencing alternatives, the nature and characteristics of the offenses, the evidence offered by the parties on enhancement and mitigating factors, and the potential for rehabilitation or treatment. The record in this case supports the trial court's finding that [the Petitioner] has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. The presentence report indicates that [the Petitioner] has fifty-four prior convictions, and that thirteen of them are felonies. At the sentencing hearing the trial court noted that it gave "a lot of credence, or lot of credit or whatever, to having a previous history." The record also supports the trial court's finding that [the Petitioner] failed to comply with the conditions of a sentence involving release into the community and that [the Petitioner] was released on probation at the time of the felony. The presentence reports reflects that [the Petitioner's] probation in other cases had been revoked at least five different times, and he was placed on probation for criminal trespass two days before the present offense occurred. He was also on probation for unauthorized use of a vehicle. Concerning this issue, the trial court further noted:

In regard to being on probation when these offenses occurred, in looking at the presentence investigative report, it appears that the first seven misdemeanors that you were on probation for, one on probation two days before this happened, for trespass, [], the sentences were received on June 11, these cases occurred on June the 13th.

Six months, in regard to unauthorized use of a motor vehicle. You were on probation for something that occurred on March the 20th, driving without a license, you were revoked on March 20th, you were on probation.

Aggravated criminal trespass out of East Ridge occurring on November the 5th, or the disposition date, you were on probation for that. You were on probation for a theft out of East [R]idge, the disposition date was the same thing. You were on probation for possession of burglary tools out of East Ridge November '05. You were on probation when this occurred.

Therefore, the trial court properly applied enhancement factors (1), (8), and (13)(C).

Id. at *3-4.

The Petitioner then filed a timely pro se petition for post-conviction relief, alleging that he was denied the effective assistance of counsel, both at trial and on appeal. Counsel was appointed, and an amended petition was filed. As specific allegations of his claim, the Petitioner stated that his counsel was ineffective in the following ways: (1) failing to investigate the Petitioner's criminal history or discovering possible errors in the presentence investigation report; (2) failing to provide the Petitioner with a copy of the report or discuss it with him before the day of sentencing; (3) failing to ask for a continuance to investigate the Petitioner's objections to the report; (4) failing to bring the errors in the report to the court's attention or assert the Petitioner's objections to the report at the sentencing hearing; (5) failing to research or argue merger of the Petitioner's prior convictions; and (6) failing to honor the Petitioner's request to challenge the inclusion of constitutionally invalid convictions, expunged charges, and merged convictions in the report on appeal. He asserted that, due to these errors of counsel, he received the maximum sentence and was unable to obtain relief on appeal.

-4-

A hearing was held in the post-conviction court, at which only the Petitioner and trial counsel testified. It was noted for the record that the presentence investigation report was filed on May 27, 2010, and that the sentencing hearing was held on June 7, 2010. Trial counsel recalled receiving the presentence report, and although he could not remember the exact date, he believed he received it approximately a "week before" the sentencing hearing. He knew that the sentencing hearing took place on a Monday and that he "had [the report] for the weekend for sure."

When asked "[w]hat steps" he took "to investigate the material that was provided in that presentence report[,]" trial counsel stated that he spoke with the Petitioner prior to receiving the report, so he "knew some background at least locally what [they] were going to be looking at." He said that, after receiving the report, he went to visit the Petitioner in jail and talked with him about the information contained in the report; he believed that this conversation took place either Saturday or Sunday afternoon before the sentencing hearing. He clarified that he forgot to bring a copy of the report with him to this meeting and tried to return to see the Petitioner, but given the late hour, was not permitted to do so by jail officials. Trial counsel stated that, on the morning of the sentencing hearing, he reviewed the report with the Petitioner "for about an hour and went over the entire thing with him." According to trial counsel, he told the Petitioner that he would seek a continuance of the sentencing hearing to conduct further investigation if the Petitioner desired, but the Petitioner wanted to proceed and in fact "insisted" on going forward.

When asked about the Petitioner's concerns regarding his prior criminal history, trial counsel stated the Petitioner had two specific issues—

> One was an item of the PSI that was about a prior sexual offense from when he was maybe between eighteen and twenty-one years old, he was a young man. That he didn't in fact commit that crime at all and that shouldn't have been on the report. . . . [T]here was no evidence to the matter, you know, we couldn't provide any, of course, anything that showed he was wrongfully, you know, convicted and the PSI was incorrect. But I did I believe mentioned it to the [j]udge in sentencing.
>
> The other thing that he was concerned about is that Jim Rox, the probation officer that did that presentence investigation report, left off the fact that he served in the military and he was concerned about that as well.

According to trial counsel, he raised the Petitioner's concern about his innocence regarding the sexual offenses at the sentencing hearing, but they were unable to provide any documentation to the court that the Petitioner was wrongfully convicted. A copy of the

presence report with trial counsel's notations of the Petitioner's concerns was entered into evidence. It was noted on this document that the Petitioner also took issue with a guilty-pleaded burglary of habitation conviction, Hamilton County docket number 210558, stating that "he was already incarcerated[,]" so it was an impossibility for him to have committed the crime. Trial counsel could not recall if he expressed this last concern of the Petitioner's with the trial court.

Trial counsel stated that he advised the Petitioner that it would be beneficial to continue the sentencing hearing to investigate these matters further, but the Petitioner wanted to go forward because he "was pretty confident that he was going to get probation and wanted to get out that day." Prior to the return of the presentence report, trial counsel had conducted a search of the Petitioner's criminal record on "the Hamilton County local record online database[,]" which search supported the convictions listed in the presentence report according to trial counsel. Trial counsel stated that he and the Petitioner had already reviewed the search returned by this database and that he advised the Petitioner that, in his legal opinion, the Petitioner qualified as a Range III, persistent offender. The State had made an offer to the Petitioner of six years a Range II, but the Petitioner desired to enter an open plea as a Range II in the hope of a better sentence. Trial counsel allowed the Petitioner to make his own decisions and opined that an open plea as a Range II "was advisable in the alternative of taking the six years" because, if the Petitioner had proceeded to trial and was thereafter determined to be a Range III offender, then he would have been "looking at eight to twelve years rather than four to eight years." Trial counsel asserted that he and the Petitioner discussed the Petitioner's prior criminal history "at length" and that the Petitioner confirmed at least four felony convictions. When asked if he found any inconsistencies between the presentence report and the database search, trial counsel replied,

> No, the PSI supports the five convictions of felonies that the local CJUS states. There are four D felony burglary of businesses which is consistent with [the Petitioner's] criminal history, burglary of [a] business and then the theft of property, the E felony would be the fifth that would bump him into the further range that he did not plead to.

Specifically, regarding the conviction for burglary of a business listed in the presentence report as docket number 254342, trial counsel noted that this was a clerical error, the correct docket number being 254842, but even if the error was corrected, the conviction remained. Trial counsel stated that he did not make any merger argument regarding the Petitioner's felony convictions at the sentencing hearing "because the five prior convictions, just the priors in Hamilton County, do not merge, they are five independent convictions for felonies[, which] would exceed the top of Range II along with the over twenty misdemeanors that [the Petitioner] ha[d]." Trial counsel stated that the trial court was "aware that some of

the felonies, a theft and a burglary of business, they ha[d] the same date." Trial counsel listed the five felonies to which he was referring: (1) burglary of a business, a Class D felony, docket number 210558, offense date January 26, 1996; (2) burglary of a business, a Class D felony, docket number 241040, offense date March 22, 2002; (3) burglary of a business, a Class D felony, docket number 245342, offense date December 18, 2002; (4) theft of property valued between $1,000 and 10,000, a Class E felony, docket number 252035, offense date September 3, 2004; and (5) burglary of a business, a Class D felony, docket number 254842, offense date July 10, 2005. Trial counsel stated that he "had knowledge of all of these very early in the case and went over these cases with [the Petitioner] as well as the prior misdemeanor convictions, many of the prior misdemeanor convictions[.]" Moreover, trial counsel stated that the Petitioner had additional felony convictions other than the five listed above.

The Petitioner submitted a general sessions judgment form for his theft under $100 conviction in docket number 678872. Trial counsel agreed that the handwriting on this judgment form was unclear. Trial counsel opined that, based upon his review of the judgment form, while it was possible that the Petitioner was sentenced to the workhouse for this conviction, he believed the sentence was suspended. The presentence report noted the eleven-month and twenty-nine-day sentence as suspended. Post-conviction counsel noted the relevance of this judgment as follows: "If that judgment was eleven twenty-nine to serve in the workhouse, then there is a great potential that [the Petitioner] would have been in the workhouse on January 26th, 1996 when the next case occurred which is a felony[,]" docket number 210558, burglary of a business.

Trial counsel confirmed that he did not require the State to provide certified copies of the convictions at the sentencing hearing because, in order to do so, he would have had to continue the hearing, which the Petitioner did not want to do. According to trial counsel, the Petitioner wanted "to set the sentencing hearing as quickly as possible[.]" Regarding the sexual offenses which the Petitioner denied, trial counsel stated that the Petitioner understood that the only way to clear up those discrepancies was to the continue the sentencing hearing, which avenue he declined.

The fifty-four-year-old Petitioner testified and acknowledged that he had a significant criminal history, consisting mostly of burglaries and the majority of which were misdemeanors. When asked if he expressed his concerns about the presentence report to trial counsel at the sentencing hearing, the Petitioner replied,

> Well, I told [trial counsel] that there was cases on there that I was not sure
> about and some of them, one or two that I didn't think were mine and I asked
> [trial counsel] to verify some of those. He brought some form back that the

DA had gave him and asked me was that my signature and I said, yeah, and that was the end of that and we came on in and had a hearing.

According to the Petitioner, following his sentencing hearing, he requested certified copies of "all of the convictions listed in the presentence investigation report[.]" The Petitioner entered into evidence an affidavit from an employee of the Hamilton County General Sessions Court Clerk's Office, wherein the employee averred that the files in docket numbers 762563 (failure to appear on May 7, 1997), 756586 (driving with a revoked license on May 22, 1997), and 814303 (possession of burglary tools on August 4, 1998) were not to be found and that she was "only able to find and provide a screen print on these cases" for post-conviction counsel. All three cases were misdemeanors handled in the general sessions court. Based upon this employee's affidavit, post-conviction counsel alleged that these three convictions "d[id] not exist."

Post-conviction counsel also produced the judgment form in docket number 254342, which reflected a conviction against Benny Allen Nelson, not the Petitioner. The Petitioner testified that aliases were listed for the him in the presentence report, that Benny Allen Nelson was not such an alias, and that he addressed this with trial counsel. The Petitioner also introduced a copy of the judgment form in 152411 listed in his presentence report as a 1983 conviction for grand larceny; however, the judgment form reflected a conviction in that case number for Terry T. Price. The Petitioner testified that he never used the name Price as an alias and that trial counsel did not investigate this matter prior to sentencing or object to that conviction at sentencing.

The Petitioner was then asked about several of his convictions in the State of Georgia. A copy of the June 3, 1999 judgment in case number 40498-J for the offenses of driving under the influence, driving while unlicensed, and no proof of insurance was entered into evidence. Also, a copy of the June 3, 1999 judgment in case number 40466-J for the offenses of driving under the influence, driving while unlicensed, expired tag, no proof of insurance, and failure to wear a safety belt was entered into evidence. The charging instruments in both cases were likewise entered into evidence and reflected an offense date in case 40498-J of May 10, 1999, and a date of March 16, 1999, in case number 40466-J. The Petitioner testified that he was not advised of his right to counsel in those cases and such advisement was not apparent from the documents submitted. Moreover, according to the Petitioner he expressed his concern to trial counsel about these convictions, and trial counsel failed to investigate the matter any further.

Questioning then turned to the Petitioner's conviction in docket number 157621 for fraudulent use of a credit card valued between $1,000 and $10,000. The Petitioner produced his July 23, 1984 petition to enter his guilty plea in that case, the motion to waive a jury trial,

the judgment form, and a certificate of counsel as exhibits to the hearing, and he testified that he was not advised of his right against self-incrimination in that matter. All of the documents submitted reflected that the Petitioner was represented by counsel and waived multiple constitutional rights but did not mention waiver of that specific right. The Petitioner also entered similar documentation surrounding his two sexual offense convictions, case numbers 140412 and 140416, and again stated that he was not advised of his right against self-incrimination in those cases; likewise such advisement was not reflected in those documents. Finally, he made the same claim of error in case number 136327 which was a 1978 conviction for receiving stolen property. The Petitioner testified that trial counsel did not address these concerns at the sentencing hearing. Post-conviction counsel asserted that because waiver of the right was not apparent from the documents, the convictions should not have been used in the trial court's sentencing decision to enhance the Petitioner's sentence.

Finally, the Petitioner testified that he did not ask trial counsel to seek a continuance of the sentencing hearing after viewing the presentence report but simply "brought these issues to him[.]" He stated that trial counsel did not thereafter address the possibility of the continuing the sentencing hearing with him. According to the Petitioner, he was not "adamant about going forward with the sentencing hearing that day[.]" Trial counsel did raise the Petitioner's concerns about his military service and an incorrect address at the sentencing hearing according to the Petitioner; however, trial counsel did not raise any of the Petitioner's additional concerns. The Petitioner claimed that he "brought these same issues to [trial counsel's] attention for appeal and [that trial counsel] still did not investigate them."

Following the post-conviction hearing, the Petitioner submitted a written memorandum to the post-conviction court. The Petitioner noted in his memorandum the defects in his convictions that were pointed out at the hearing. In addition to several of the arguments contained in the petition, he argued in the memorandum that trial counsel (1) "failed to offer or maximize proof about [the Petitioner's] acceptance of responsibility by entering a guilty plea to the charge" or "about the lack of harm to the victim at sentencing"; (2) "failed to file a sentencing memorandum in opposition to the [p]resentence [i]nvestigation [r]eport or to offer mitigating factors for consideration at sentencing"; (3) "failed to require the [S]tate to produce certified judgments of [the Petitioner's] prior convictions"; and (4) "failed to object to the inclusion of expunged charges as evidence at sentencing." According to the Petitioner, if trial counsel had challenged all of the deficiencies in the Petitioner's judgments, then the number of felonies would have been "substantially reduce[d]" and only twenty-three misdemeanors would have remained. According to the Petitioner, the proof that was presented at the sentencing hearing was "drastic[ally] differen[t]" from the evidence that "should have and could have been presented." He submitted that, because he received the maximum sentence, trial counsel's errors were prejudicial. No response from the State is apparent in the record before this court.

By order filed on March 12, 2013, the post-conviction court denied the Petitioner relief. This appeal followed.

## ANALYSIS

On appeal to this court, the Petitioner contends that trial counsel failed to provide the effective assistance of counsel guaranteed him by the United States and Tennessee constitutions at his sentencing hearing. Petitions for post-conviction relief are governed by the Post-Conviction Procedure Act. Tenn. Code Ann. §§ 40-30-101 to -122. To obtain relief, the petitioner must show that his conviction or sentence is void or voidable because of the abridgement of a constitutional right. Tenn. Code Ann. § 40-30-103. The petitioner must prove his factual allegations supporting the grounds for relief contained in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(2)(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is clear and convincing when there is no substantial doubt about the accuracy of the conclusions drawn from the evidence. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

The post-conviction court's findings of fact are conclusive on appeal unless the evidence in the record preponderates against them. See State v. Nichols, 90 S.W.3d 576, 586 (Tenn. 2002) (citing State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999)); see also Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). The petitioner has the burden of establishing that the evidence preponderates against the post-conviction court's findings. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). This court may not re-weigh or reevaluate the evidence or substitute its inferences for those drawn by the post-conviction court. Nichols, 90 S.W.3d at 586. Furthermore, the credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the post-conviction court. Bates v. State, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997).

Ineffective assistance of counsel claims are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001). Thus, the post-conviction's findings of fact underlying a claim of ineffective assistance of counsel are reviewed under a de novo standard, accompanied with a presumption that the findings are correct unless the preponderance of the evidence is otherwise. Fields, 40 S.W.3d at 458 (citing Tenn. R. App. P. 13(d)). The post-conviction court's conclusions of law are reviewed under a de novo standard with no presumption of correctness. Id.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland,

466 U.S. at 687; see Lockart v. Fretwell, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance was deficient is not enough; rather, the petitioner must also show that but for counsel's deficient performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Strickland standard has also been applied to the right to counsel under Article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. See Henley, 960 S.W.2d at 580. The performance prong requires a petitioner raising a claim of ineffectiveness to show that counsel's representation fell below an objective standard of reasonableness or was "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability means a probability sufficient to undermine confidence in the outcome." Id. Failure to satisfy either prong results in the denial of relief. Id. at 697.

Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. Strickland, 466 U.S. at 687 (1984); Burns, 6 S.W.3d at 461; Baxter, 523 S.W.2d at 936. In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. "Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

The post-conviction court made detailed findings on the Petitioner's issues and determined that the Petitioner received the effective assistance of counsel. The post-conviction court explained as follows:

> The gravaman of the [P]etitioner's complaints is that, for one or more reasons, counsel did not discover or challenge several errors in the pre-sentence investigation report. The [c]ourt finds that any deficiency in counsel's performance in this respect was not prejudicial for several reasons.

-11-

First, counsel did review the report with the [P]etitioner before the sentencing hearing and discover many of the [P]etitioner's concerns about the report. That, apparently, the [P]etitioner did not convey all his concerns about the report, including his concerns about the facial validity of the Georgia judgments of conviction, to counsel the [c]ourt does not attribute to lack of opportunity. In any event, the [c]ourt accredits counsel's testimony that, despite concerns about errors in the report, the [P]etitioner did not wish to continue the sentencing hearing again.

Second, with respect to the judgment of conviction for burglary in case 210558, the record does not contain proof of the [P]etitioner's incarceration in the workhouse on the relevant date. Although it does contain a certified copy of the general sessions court judgment of conviction for theft in case 678872, exhibit 3, even if it is not clear whether the handwritten word or words after the figures "11, 29" on the judgment is the word "suspended" or the words "in the workhouse," it is clear from the checkmark in the box below that the sentence was suspended.

Third, with respect to the general sessions court judgments in cases 756586, 762563, and 814303, from the affidavit of a deputy clerk, exhibit 4, it appears that only screen prints of the cases, not the files, are available. The omission of three misdemeanors, however, is inconsequential.

Fourth, with respect to the judgments of conviction in cases 152411 and 254[3]42, exhibits 8 and 5, respectively, it is true that they were not the [P]etitioner's cases. The description of the judgments of conviction, which were for petit larceny and burglary, however, correspond to other cases that were the [P]etitioner's cases: 154211 and 254842, respectively. In fact, in the comments on the [P]etitioner's prior record in the report, there is another, correct reference to the judgment of conviction in case 254842.

Fifth, with respect to the 1978 judgment of conviction for receiving stolen property in case 136327, exhibit 10, the 1979 judgments of convictions for second-degree criminal sexual conduct and criminal sexual conduct in cases 140412 and 140416, respectively, exhibit 9, the 1984 judgment of conviction for attempt to commit a felony in case 157621, exhibit 7, and the Georgia judgments of conviction, exhibit 6, none of the judgments are facially invalid. See State v. [Christopher Bomar] Wenzler, [No. W2011-00873-CCA-R3-CD, 2013 WL 865333, at *5] (citing Parke v. Raley, 506 U.S. 20, 34 (1992), as "stand[ing] not only for the position that waiver can be presumed

-12-

from a silent record, but also that the State does not have the initial burden to prove complete compliance with the right to counsel if there is a facially valid judgment, even if waiver is presumed["), perm. app. denied, (Tenn. Sept. 18, 2013)].

Sixth, although, from the report, it appears that the offenses underlying the two judgments of conviction for second-degree criminal sexual conduct and criminal sexual conduct in case 140412 and 140416, respectively, and the two judgments of conviction for burglary in case 245342 were part of the same criminal episodes, even when one [P]etitioner had at least six, prior, felony convictions, none of which were part of the same criminal episode: (1) 140412 and 140416; (2) 210558; (3) 241040; (4) 245342 and 245342; (5) 252035; and (6) 254842. Those felony convictions, with the [P]etitioner's record of repeated failures to comply with conditions of release and the lack of evidence of the possibility of rehabilitation, would warrant the same sentence.

The crux of the Petitioner's argument is that trial counsel provided ineffective assistance at his sentencing hearing by failing to discover or challenge several errors in the presentence investigation report regarding the Petitioner's criminal history. Trial counsel admitted that he did not receive the presentence report until just prior to the sentencing hearing and was unable to review it with the Petitioner until the morning of the sentencing hearing. However, trial counsel stated that he had previously discussed the Petitioner's criminal history with him and was aware of the information contained in the report. Prior to the return of the report, trial counsel had conducted a search of the Petitioner's criminal record on "the Hamilton County local record online database[,]" which search supported the convictions listed in the presentence report according to trial counsel. Trial counsel testified that he and the Petitioner had already reviewed the search returned by this database and that the Petitioner confirmed at least four felony convictions. According to trial counsel, the information from this prior search was consistent with the details of the presentence report.

Trial counsel was also aware of some of the Petitioners's grievances with the report, although apparently not all. The post-conviction court noted that the Petitioner was provided with the opportunity to convey any additional concerns with the report to trial counsel but that he failed to do so prior to the sentencing hearing. Additionally, the post-conviction court accredited the testimony of trial counsel that the Petitioner did not wish to continue the hearing to investigate the report the further and that trial counsel went forward at the behest of the Petitioner. The Petitioner has failed to establish deficient performance.

We also agree with the post-conviction court that the Petitioner has failed to establish prejudice from any deficient performance. The Petitioner pled guilty to a Class D felony as

a Range II, multiple offender. Tennessee Code Annotated section 40-35-106(a) defines a multiple offender as "a defendant who has received: (1) A minimum of two (2) but not more than four (4) prior felony convictions within the conviction class, a higher class, or within the next two (2) lower felony classes, where applicable[.]" Thus, only two felony convictions were needed to establish the Petitioner as a Range II, multiple offender. A prior conviction includes

> convictions under the laws of any other state, government or country that, if committed in this state, would have constituted an offense cognizable by the laws of this state. In the event that a felony from a jurisdiction other than Tennessee is not a named felony in this state, the elements of the offense shall be used by the Tennessee court to determine what classification the offense is given.

Tenn. Code Ann. § 40-35-106(b)(5). Subject to specific statutory exclusions, "convictions for multiple felonies committed within the same twenty-four-hour period constitute one (1) conviction for the purpose of determining prior convictions." Tenn. Code Ann. § 40-35-106(b)(4).

The Petitioner goes through great pains to discredit trial counsel's testimony that he believed the Petitioner was likely a Range III, persistent offender, challenging the validity of several of the Petitioner's felony convictions.[1] However, this argument ignores the applicable inquiry, which is whether trial counsel's investigation or lack thereof regarding the presentence report impacted the trial court's sentencing determination to the Petitioner's prejudice, i.e., whether there is a reasonable probability that, but for these errors, the result of the sentencing hearing would have been different. The Petitioner's range classification, which was a part of the plea agreement, is not at issue. Thus, even if trial counsel was incorrect that the Petitioner qualified for Range III sentencing, the relevant sentencing determination of the trial court at issue is whether the criminal history enhancement factor was properly applied to enhance the Petitioner's sentence.

This court on direct appeal found that the record supported the trial court's application of the criminal history enhancement factor, noting that the presentence report indicated that the Petitioner had fifty-four prior convictions and that thirteen of those were felonies. Bell, 2012 WL 32710, at *3. The Petitioner does not argue that he did not have additional convictions in addition to those necessary to establish the range but simply that he had substantially less than relied upon by the trial court. The post-conviction court discredited many of the Petitioner's arguments regarding his prior convictions, finding that (1) there was

---

[1] We note that the Petitioner, at no time, has raised a challenge to the voluntary nature of his plea.

no proof that the Petitioner was incarcerated and unable to commit the burglary offense in 210558; (2) although incorrect docket numbers were listed in the presentence report for cases 152411 and 254342, such were merely clerical errors because actual convictions for the Petitioner did exist under similar docket numbers; and (3) in accordance with this court's decision in Wenzler, the Petitioner's multiple judgments which were silent regarding his rights were facially valid, and the State did not have the initial burden to prove complete compliance. The post-conviction court determined that the Petitioner had at least six prior felonies despite his many arguments to the contrary; again, we note that only two were needed to establish his Range II classification.

Even if we were to agree with each of the Petitioner's arguments regarding his prior convictions, which we do not, the Petitioner does not dispute that he does still have some felonies and over twenty misdemeanor convictions remaining. His remaining convictions alone would be more than sufficient to support a finding of the criminal history enhancement factor in Tennessee Code Annotated section 40-35-114(1). The Petitioner also ignores that the trial court found two additional enhancement factors: the Petitioner, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community; and the Petitioner was released on probation at the time of the felony. Tenn. Code Ann. § 40-35-114(8), and (13)(C). This court on appeal found that the record supported the application of those factors, see Bell 2012 WL 32710, at *3-4, and the Petitioner makes no argument which would effect the application of these factors. The post-conviction court, also the same court which sentenced the Petitioner, found that the Petitioner's "felony convictions, with the [P]etitioner's record of repeated failures to comply with conditions of release and the lack of evidence of the possibility of rehabilitation, would warrant the same sentence." We agree; the Petitioner has not established that the result of his sentencing hearing would have been different absent the alleged errors.

The record supports the detailed findings of the post-conviction court. Accordingly, we conclude that there is nothing in the record to preponderate against the post-conviction court's conclusion that trial counsel provided effective assistance at sentencing.

## CONCLUSION

The Petitioner has failed to prove by clear and convincing evidence that he received the ineffective assistance of counsel at his sentencing hearing. We, therefore, affirm the judgment of the post-conviction court denying relief.

_____
D. KELLY THOMAS, JR., JUDGE

-15-